### BECK v. DAVIS et al.

No. 26469. Feb. 4, 1936.

Suits & Disney, for petitioner.

W. P. Morrison and Ralph Schaller, for respondents.

PER CURIAM. This is an original proceeding in this court, wherein O. V. Beck, as petitioner, seeks the review and vacation of an award made by the State Industrial Commission in favor of the respondent, Walter Davis. The parties will hereinafter be referred to as petitioner and respondent.

The record before us presents substantially the following state of facts: The petitioner and respondent were residents of the state of Texas; the petitioner was engaged in drilling and lease operations both in Texas and in Oklahoma, and in connection therewith carried general compensation insurance with the Traders & General Insurance Company of Dallas, Tex., and with the State Insurance Fund of Oklahoma in connection with his lease operations in Oklahoma. The respondent entered the employ of the petitioner at Nocona, Tex., and worked for a time in Texas, and was sub-

sequently transferred to Oklahoma. While working as a roughneck on drilling operations near Oscar, Okla., respondent received the injury for which compensation was awarded. The accident was reported to the Industrial Accident Board of Texas. A claim blank was furnished respondent and he admits that he filled this out and returned it to the Texas board. Just when this was done the record does not disclose, but apparently it happened shortly after the occurrence of the accident. .

However this may be, on January 8, 1935, respondent filed employee's first notice of injury and claim for compensation with the State Industrial Commission of Oklahoma. Therein he alleged that he had sustained an accidental injury on December 18, 1934, while in the employ of the petitioner and engaged in a hazardous business, as defined by the Workmen's Compensation Act of this state, and sought compensation.

The commission gave notices and set the matter for hearing and held a hearing thereon on February 6, 1935. The petitioner and respondent appeared at this hearing both in person and by their attorneys. The petitioner and the State Insurance Fund filed an answer denying liability. In the proceeding had before the commission, its jurisdiction was challenged on the ground that prior thereto the Industrial Accident Board of Texas had acquired jurisdiction of the cause. No evidence was offered to show whether the claim filed with the Texas board was prior in time to the claim filed with the Industrial Commission of this state. Nor was there any evidence offered to show that any proceedings had been had before said board, or that respondent had sought or obtained any relief therefrom. On the contrary, the respondent, while admitting the filing of the claim, denied any intention of prosecuting it in Texas, and declared that he had elected to proceed under the laws of Oklahoma and before its tribunal, and that he had abandoned any claim in Texas. This was not disputed, and thereupon the State Industrial Commission assumed jurisdiction in the premises and heard the evidence offered by the respective parties.

Subsequently, on March 5, 1935, the commission made an award in favor of the respondent granting him compensation for a temporary total disability sustained as a result of said accidental injury. The petitioner prosecuted no appeal from this award, but permitted it to become final, and subsequently paid the award in full. On March 6, 1935, the respondent here filed a motion requesting the Industrial Com-

mission to make petitioner's general insurance carrier, to wit, Traders & General Insurance Company, of Dallas, Tex., a party to the proceedings before the commission. This motion, however, was overruled and denied on April 18, 1935, and no exceptions or appeal taken therefrom. On May 8, 1935, the petitioner filed with the commission form 16, and therein asserted that the respondent had reached his maximum recovery from the injury, and requested the commission to grant a hearing for the purpose of determining the percentage of permanent disability, if any, which respondent had sustained by reason of his injury. Pursuant to this request of petitioner, notice was given to the interested parties and a hearing held by the commission on May 28, 1935, thereon. At this hearing the petitioner appeared in his own behalf, and respondent appeared in person and by his attorney. The testimony before the commission was confined to a determination of the nature, extent, permanency, and degree of the injury sustained by the respondent.

The medical testimony as offered by both parties was in substantial accord with reference to the actual details of the injury, but in disagreement as to the degree and extent of the permanent injury resulting. Dr. H. A. Calvert, on behalf of the respondent, testified that in his opinion respondent had sustained a total loss of the use of his left hand and a 90 per cent. loss of the use of his entire left arm, whereas Dr. W. K. West, on the part of the petitioner, gave it as his opinion that respondent's injury would not exceed 75 per cent. permanent loss of use of his left arm. The testimony as to the details of the injury showed that respondent had sustained the destruction of his index and middle fingers, and had had an amputation between the wrist and the knuckles; that the little finger was wholly useless and the thumb practically so on account of loss of flexion. Upon the testimony thus presented, the cause was submitted by both parties, and on June 1, 1935, the commission entered the award which we are now called upon to review. The pertinent portions of this award are as follows:

"1. That on the 18th day of December, 1934, the claimant was in the employment of said respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental injury, arising out of and in the course of his employment, consisting of an injury to the left arm.

"2. That the average daily wage of the claimant at the time of said accidental injury was $5.

"3. That by reason of said injury the claimant was temporarily totally disabled from December 18, 1934, to May 7, 1935, or for a total of 19 weeks beyond the five-day waiting period, for which he has been paid compensation at the rate of $18 per week or the total sum of $342.

"4. That by reason of said accidental injury the claimant has sustained 90 per cent. permanent partial loss of the use of the left arm.

"Upon consideration of the foregoing facts: The commission is of the opinion that the claimant is entitled to 225 weeks' compensation at the rate of $18 per week, or the sum of $4,050, to be paid in a lump sum on account of 90 per cent. permanent partial loss of use of the left arm.

"It is therefore ordered: That within 15 days from this date, the respondent or insurance carrier pay to the claimant the sum of $4,050, or 225 weeks' compensation at the rate of $18 per week, on account of 90 per cent. permanent partial loss of the use of claimant's left arm, and respondent and insurance carrier to pay all authorized and reasonable medical, hospital and doctor bills incurred by reason of said accidental injury."

On June 18, 1935, the petitioner employed present counsel, and they immediately filed a motion to vacate said award and to make Traders & General Insurance Company, of Dallas, Tex., a party respondent to the action before the commission. A hearing on this motion and application was had by the commission on June 25, 1935, and overruled and denied in an order made June 26, 1935.

The petitioner presents seven assignments of error, which are discussed and presented under three propositions. These may be summarized as follows:

(a) Lack of jurisdiction inhering in the commission.

(b) Insufficiency of the evidence to sustain the finding of the commission as to degree of loss of use of the arm.

(c) Error of the commission in refusing to make Traders & General Insurance Company a party to the action before it.

It is urged by the petitioner that since the parties were residents of Texas, and the contract of employment was made in said state, therefore, the injury sustained by respondent was compensable under the laws of the state of Texas; that respondent had filed a claim with the Industrial Accident

Board of Texas, and had thereby elected to seek his remedy in the form provided by that state. The record, as we view it, does not sustain the contention of the petitioner in this respect. The laws of Texas were not introduced in evidence and are not a part of the record. It is the general rule that where the laws of a foreign jurisdiction are not pleaded and proved, they will be assumed to be the same as those of the jurisdiction of the forum. Our Workmen's Compensation Act has no extraterritorial effect (Sheehan Pipe Line Const. Co. v. State Industrial Com., 151 Okla. 272, 3 P. [2d] 199; Continental Oil Co. v. Pitts, 158 Okla. 200, 13 P. [2d] 180), but does extend its protecting aegis to employees who come within its provisions and who are injured in this state, regardless of their residence and the place where the contract of employment was entered into. As we have said in Associated Indemnity Corporation v. Landers, 159 Okla. 190, 14 P. (2d) 950:

"1. Jurisdiction of Industrial Commission under Workmen's Compensation Act does not depend on where contract of employment was made, or injured employee's place of residence. (St. 1931, sec. 13348, et seq.).

"2. Industrial Commission, under Workmen's Compensation Act, has jurisdiction if injury to employee occurred within state (St. 1931, sec. 13348, et seq.).

"3. Compensation to be awarded by Industrial Commission is that provided by provisions of local Workmen's Compensation Act and not by provisions of foreign statute (St. 1931, sec. 13348, et seq.)."

Since under the record before us no question of comity or application of the "full faith and credit" clause of the Constitution of the United States was properly raised or presented, we decline to pass thereon. Therefore, the authorities cited by petitioner with reference thereto have no application to the case now under consideration. Although the State Industrial Commission is a tribunal of limited jurisdiction (Wilson Drilling Co. v. Beyer, 138 Okla. 248, 280 P. 846), and jurisdiction, where none exists, cannot be conferred on it by agreement, waiver, or conduct (Hardy Sanitarium v. DeHart, 164 Okla. 29, 22 P. [2d] 379; Frates v. State Industrial Commission, 164 Okla. 60, 22 P. [2d] 905), yet, when its jurisdiction exists and has been invoked, it is thereafter exclusive and continuing. See Commercial Casualty Ins Co v. E. B. Cooke Service Station, 165 Okla. 36, 24 P. (2d) 1007; Wilkerson v. Devonian Oil Co., 114 Okla. 84, 242 P. 531.

The business, employment, and injury involved in the case now under consideration were prima facie within the jurisdiction of the Industrial Commission (sec. 13361, O. S. 1931). As we have heretofore stated, the petitioner participated in the original hearing of this case before the Industrial Commission and did not appeal from the order and award made with reference to compensation for temporary total disability, but thereafter complied with said order and award and made the payment required, and by his own motion requested the commission to conduct a hearing and make the order of which he now complains. Under these circumstances, we are of the opinion that the rule announced by us in Sterling Milk Products Co. v. Underwood, 167 Okla. 361, 29 P. (2d) 937, is applicable, wherein Mr. Justice Busby, speaking for this court, said:

"Where evidence in original compensation proceedings was sufficient to establish fact on which Industrial Commission's jurisdiction depended, commission taking jurisdiction was deemed to have determined jurisdictional fact, precluding inquiry into jurisdictional question in subsequent proceeding for compensation on ground of change of condition."

Likewise, we fail to find any support in the record for petitioner's contention that the respondent, by filing a claim with the Industrial Accident Board of Texas, thereby made a binding election to proceed in that jurisdiction. On the contrary, we believe that the record clearly discloses an intention on the part of the respondent to not proceed elsewhere than in the tribunals of this state, and a disavowal of any previous acts that he may have made elsewhere, and that if there was any election, it was to proceed before the Industrial Commission here.

In Barton v. Oklahoma, K. & M. Railway Co., 96 Okla. 119, 220 P. 929, we said:

"In case of Register v. Carmichael, 169 Ala. 588, 53 South. 799, 34 L. R. A. (N. S.) 309, the note on page 310 states the rule as follows:

"'If the clear weight of authority, though there is some conflict in the decisions, seems to sustain the position taken by the court in Register v. Carmichael, that "an election, to be conclusive, must be efficacious to some extent at least. The mere bringing of a suit is not determinative of the right. The party against whom the estoppel is pleaded must have received some benefit under his election," or have caused some detriment to the other party.'

"The doctrine of election of remedies is also stated in Words and Phrases, vol. 3 (First Series) p. 2337, as follows:

" 'The doctrine of election depends, not on technical rules, but on principles of equity and justice and actual intention. An election made in ignorance of material facts is, of course, not binding, when no other person's rights have been affected thereby. So, if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election is to be presumed. Watson v. Watson, 128 Mass. 152.'

"The rule is also well established that the binding force of an election cannot be predicated upon mere imputed knowledge, for the doctrine is based entirely upon the idea of a conscious exercise of choice between two remedies which are inconsistent with each other. 20 Corpus Juris, p. 36; Craig et al. v. Meriweather, 84 Ark. 298, 105 S. W. 585."

See, also, Noble Drilling Co. v. Murphy, 131 Okla. 34, 267 P. 659. Under the rule announced in the above authorities, there was no election by respondent which prevented him from maintaining this action.

Petitioner next urges that the evidence does not justify the finding of the commission of a 90 per cent. loss in use of the left arm by the respondent. The uncontroverted evidence before the commission showed that the respondent had sustained a very severe injury; that the index and middle fingers of his left hand were torn off, and that in addition thereto the tendons of the forearm had been pulled out, and that he had to undergo an amputation of his hand between the wrist and the knuckle joints; that the remaining finger was useless and that there existed practically no flexion in the thumb. The medical testimony was in agreement in this respect. The medical testimony of the respondent was sufficient to establish a total loss of the hand and a 90 per cent. loss of use of the arm, whereas that on the part of the petitioner was limited to 75 per cent. This question, therefore, became a question of fact for determination by the commission from the expert medical testimony before it. The commission chose to accept the evidence on the part of the respondent and to disregard or discount that offered by the petitioner. This it was privileged to do. See Hubbard Drilling Co. v. Moore, 158 Okla. 130, 12 P. (2d) 897.

Section 13356, O. S. 1931, provides in part as follows:

"The following schedule of compensation is hereby established: * * *

"Hand: For the loss of a hand, two hundred weeks.

"Arm: For the loss of an arm, two hundred and fifty weeks. * * *

"Loss of Use: Permanent loss of use of a thumb, finger, toe, arm, hand, foot, leg or eye, shall be considered as the equivalent of the loss of such thumb, finger, toe, hand, arm, foot, leg or eye."

We had a similar situation presented in Choctaw Portland Cement Co. v. Lamb, 79 Okla. 109, 189 P. 750, and therein we held:

"Where an injury inflicted upon an employee caused the loss of the use of the entire arm, it is equivalent to the loss of the arm, and the claimant is entitled to the compensation provided by the act for the loss of an arm, although the amputation of the arm was between the elbow and the wrist."

We think that the rule announced in the above case is applicable to the situation presented by the record before us, and since there was sufficient competent evidence before the commission to sustain its finding in this respect, that it should not be disturbed.

This leaves for consideration the alleged error of the commission in refusing to make Traders & General Insurance Company, of Dallas, Tex., a party respondent to the action pending before it. Petitioner urges that since his policy with this company contained an extraterritorial provision, he was entitled to have said company appear and defend him against any award that might be entered against him and in favor of the respondent on the hearing before the commission. Since the record does not show that the petitioner ever filed this contract with the State Industrial Commission of this state, and fails to show any approval thereof by the commission, as provided by section 13374, O. S. 1931, therefore, the effect of petitioner's motion, if granted, would have been to compel the State Industrial Commission to construe a contract of insurance between the petitioner and the insurance company. This the commission had no right to do, and therefore the motion was properly denied, as we have said in Farmers Gin Co. v. Jones, 146 Okla. 79, 293 P. 527:

"The State Industrial Commission, under the provisions of the Workmen's Compensation Act (Comp. St. 1921, sec. 7282, et seq. as amended), is vested with jurisdiction to determine whether or not a compensation insurance policy theretofore issued to the employer has been canceled in accordance with the provisions of the statute providing a method for cancellation, but has no jurisdiction to determine whether such a policy has been canceled under the provisions of the insurance contract."

If the petitioner desires to adjudicate his claims against the Traders & General Insurance Company, of Dallas, Tex., under the contractual provisions of his insurance with them, they may be properly heard and adjudicated in the civil courts, but the State Industrial Commission cannot consider such claims.

It appearing that the contentions advanced by the petitioner are without merit, and that the State Industrial Commission proceeded properly herein, the order and award of said commission will be in all things affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.