L. C. CLINGAN et al., Petitioners,

v.

Henry SHEHORNE and the State Industrial Commission, Respondents.

No. 38222.

Supreme Court of Oklahoma.

Sept. 23, 1958.

Rehearing Denied Oct. 28, 1958.

Robert D. Crowe, Oklahoma City, for petitioners.

Rex Holden, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

JOHNSON, Justice.

On October 12, 1957, Henry Shehorne, respondent herein, filed a claim for compensation against L. C. Clingan, doing business as Clingan Sand & Gravel Company, stating that on the 3rd day of August, 1957, while in the employ of L. C. Clingan, doing business as Clingan Sand & Gravel Company, and while engaged in the course of his hazardous employment, he sustained an accidental injury consisting of an injury to his heart resulting in permanent disability to his person; that the accident occurred while he was engaged in shoveling wet, heavy sand and mud to get a stalled truck out of the mud. The accident occurred near Burkburnett, Texas. He was employed by L. C. Clingan and the contract of employment was entered into in the City of Lawton, Oklahoma.

On November 19, 1957, respondent filed an amended claim making L. C. Clingan, doing business as Red River Sand & Gravel Company, and L. C. Clingan and R. E.

Stokes, doing business under the firm name of Burk Transit Mix Concrete Company and Bituminous Casualty Company, insurance carrier for Clingan, parties to the proceeding and changed the date of the injury from August 3, 1957, to July 19, 1957.

The trial judge at the close of the evidence, in substance, found that on July 19, 1957, respondent while in the employ of petitioners sustained an accidental injury arising out of and in the course of his hazardous employment consisting of an injury to his heart; that as a result of said injury he has been permanently and totally disabled and is entitled to compensation in the sum of $15,000, payable at the rate of $30 per week for a period of 500 weeks, and upon such findings entered an award against petitioners and insurance carrier, Bituminous Casualty Company, in said sum, which award was sustained on appeal to the Commission en banc.

Petitioners bring the case here to review this award and contend that it is not sustained by the evidence but is contrary to all the evidence and contrary to law.

It is argued by petitioners that there is a total lack of evidence to sustain the allegation of respondent's claim that the injury sustained by him constituted an accidental injury within the meaning of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq.

Respondent testified that on the date stated in his claim he sustained an accidental injury while engaged in hauling sand and rock from Burkburnett, Texas to Duncan, Oklahoma; that he was employed by L. C. Clingan at Lawton, Oklahoma as a truck driver; that sometimes he was required to do other work, and on several occasions did work for the partnership composed of L. C. Clingan and R. E. Stokes, pouring cement into the concrete mixer.

Respondent also testified that on the 3rd day of August, 1957, he was stopped by a driver, an employee of the partnership, Burk Transit Mix Concrete Company, to help the driver get a stalled cement truck out of the mud. The temperature was ap-proximately 100 degrees. The place where the truck was stalled and where Mr. Shehorne was working was near the river and cut off by trees on both sides. He hooked his truck to the stalled truck and tried to remove it, but failed. He then shoveled heavy, wet sand and mud from a place near the rear wheel of the stalled truck. He shoveled for about fifteen or twenty minutes and then again tried to move the truck, but failed. He and Mr. Tipton, the driver of the truck, then went to get a winch truck, and both trucks were hooked to the stalled truck, but failed to remove it. He then drove his truck loaded with sand and rock to Duncan, Oklahoma, unloaded it and arrived at his home in Lawton about 6 o'clock p. m. He at that time felt a burning sensation in his chest and was dizzy and sick at his stomach. The burning sensation just came and went. The next day he felt such burning in his chest at intervals during all the day but continued to work, and the pains in his chest gradually became worse and worse until on August 8, 1957, when the pains in his chest became so severe that he was unable to continue work. He then consulted a physician and was placed in a hospital where he remained for a period of thirty-nine days. His trouble was diagnosed as coronary thrombosis, and that as a result of such condition he is now unable to do any ordinary manual labor.

Respondent on cross-examination was asked as to whether he was positive as to the date his alleged injury occurred and as to whether it occurred on the 19th day of July, 1957, rather than on August 3, 1957. Petitioner replied he did not know; he was not absolutely sure what date he received his injury, but he thought it was August 3, 1957.

Mrs. Clingan, secretary and bookkeeper for Mr. Clingan, testified that on the date respondent sustained his alleged injury he was in the employ of L. C. Clingan, doing business as Red River Sand & Gravel Company, and that Mr. Clingan had for his insurance carrier Bituminous Casualty Company.

Mr. Tipton as a witness for the defense corroborated respondent's testimony relative to the service performed and the activities engaged in in helping him remove the stalled truck.

Petitioner also offered evidence showing that respondent sustained his alleged injury on July 19, 1957, rather than on August 3, 1957. When this fact was established, counsel recalled respondent to the witness stand who testified that subsequent to his former testimony he had ascertained that the injury occurred on the 19th day of July rather than the 3rd day of August; that he was mistaken in his former testimony when he fixed the date as August 3, 1957, but whether the accident occurred on July 19, 1957, or August 3, 1957, he did perform the service in assisting Tipton to move his truck from the sand and mud as he testified in the former hearing, and the result followed as stated in his former testimony.

Respondent offered in evidence the written report of Dr. T in which he states that he first saw and examined respondent on September 17, 1957. He obtained a history of the case which, as stated by the doctor, is substantially as testified to by respondent. He thereafter made an examination of respondent, and upon such examination reached the following conclusions:

"* * * The left border of the heart was percussed at the midclavicular line and it was not considered to be enlarged. A normal sinus rhythm was present at the rate of 86; there was a definite grade III, systolic, high-pitched, soft, decrescendo murmur heard in the left parasternal region and in the mitral region. * * *

"The electrocardiogram revealed evidence of myocardial infarction, infero-septal (the old posterior location). The chest x-ray revealed the heart to be of normal size, shape and contour. There was no abnormality of the great vessels, or of the hilar vessels. The lung parenchyma was negative.

"The sedimentation rate, hematocrit, and urinalysis were all within normal limits.

"Mr. Henry Shehorne has arteriosclerotic heart disease with a coronary occlusion and myocardial infarction occurring on the 3rd of August 1957. In my opinion the time relationship of the cardiovascular symptoms as well as continued appearance of the symptoms would place the precipitating incident on August 3, 1957. The fact that he underwent unusual work for him shows a causal and precipitating relationship. The high, environmental temperature played a definite role. He also has shoulder-hand syndrome with Raynaud's Phenomena secondary to myocardial infarction. It is my opinion that Mr. Shehorne is permanently and totally disabled from performing ordinary manual labor."

Thereafter and on December 9, 1957, the doctor filed a supplemental report in which he stated:

"This is to supplement the initial report written on October 18, 1957, regarding Mr. Henry Elmer Shehorne.

"Whether or not the precipitating incident occurred on August 3, 1957, or as indicated at this time on July 19, 1957, the date would not influence my previous opinion. The basic fact, as it was related to me, is that the cardiovascular symptoms appeared the same evening as the unusual exertion and the painful episodes continued to increase in both severity and frequency each day until he was hospitalized on August 8, 1957.

"In my opinion the time relationship of the cardiovascular symptoms with the precipitating work and the continued appearance of the symptoms, would determine the causal and precipitating relationship."

Petitioners offered in evidence the deposition of Dr. B. The doctor testified that he had not examined respondent, but in

**392**

answer to a lengthy hypothetical question propounded by counsel based on the evidence adduced stated that in his opinion the activities engaged in by respondent on July 19, 1957, while attempting to move the truck from the sand did not cause, precipitate or bring about respondent's alleged heart condition, but that if he has such condition that in his opinion it was due to other causes.

This in substance constitutes the evidence in the case.

 While there is evidence from which a contrary conclusion could have been reached, we cannot say that there is no competent evidence tending to support the findings of the Commission, nor do we think that such findings are contrary to law.

This court on different occasions has held disability attributable to a condition of the heart is compensable if traceable to an accidental personal injury sustained in the course of and arising out of the hazardous employment covered by the act. Gulf Oil Corporation v. Rouse, 202 Okl. 395, 214 P.2d 251; Charles Banfield Co. v. State Industrial Commission, Okl., 309 P.2d 274, and cases therein cited.

Petitioners further contend that the award entered by the Commission should be vacated because of its indefiniteness. It is argued that the Commission made its award against three different employers; that respondent testified that he did not know who was his employer. Mrs. Clingan, secretary and bookkeeper for Mr. Clingan, stated that at the time of the incident occurring July 19, 1957, respondent was in the employ of L. C. Clingan, doing business under the firm name of Red River Sand & Gravel Company. Respondent testified that he was employed by Mr. Clingan; that at times he received his pay check from L. C. Clingan, doing business as Clingan Sand & Gravel Company, and other times from L. C. Clingan, doing business as Red River Sand & Gravel Company.

The award, however, not only awards compensation against L. C. Clingan,

doing business as Clingan Sand & Gravel Company, and Red River Sand & Gravel Company, but entered an award against L. C. Clingan and R. E. Stokes, partners, doing business as Burk Transit Mix Concrete Company. There is no evidence which would justify an award as against said partnership, and the award as against it cannot stand.

Award vacated in so far as it awards compensation against L. C. Clingan and R. E. Stokes, partners, doing business under the firm name of Burk Transit Mix Concrete Company. In all other respects the award is sustained.